IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. HAMRE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ISAIAH C. HAMRE, APPELLANT.


Filed March 14, 2023.    No. A-22-551.


Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.


PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Isaiah C. Hamre appeals from the district court for Hall County, challenging his plea-based conviction on one count of intentional child abuse. Hamre also raises, through new counsel, five claims of ineffective assistance of trial counsel. For the reasons that follow, we affirm.

## BACKGROUND

On February 23, 2022, the State filed an amended information against Hamre, alleging one count of intentional child abuse against a minor victim identified as K.N. Specifically, the State alleged that on or about November 23, 2020, Hamre knowingly and intentionally caused or permitted K.N. to be placed in a situation that endangers her life or physical or mental health or caused or permitted K.N. to be cruelly confined or cruelly punished. Hamre appeared before the district court on March 1, 2022, and acknowledged an understanding of his rights and the charge

against him. Hamre further confirmed that he understood he was facing up to 3 years of imprisonment if convicted.

Thereafter, counsel for Hamre advised the court that a plea agreement had been reached, according to which Hamre would plead no contest to the amended information. Additionally, Hamre agreed to obtain a sex offender evaluation, and the State agreed to "not oppose" a sentencing recommendation of supervised probation if a presentence investigation resulted in such a recommendation. The State provided the following factual basis to support Hamre's no contest plea:

[O]n or about November 23, 2020, the father of a juvenile with the initials K.N. reported to the Hastings Police Department that his daughter had been sexually assaulted. K.N. was 14 years old at the time. She reported to officers that earlier that day she had performed oral sex on an individual she had identified as Mr. Hamre, the Defendant. [Hamre] told K.N. that he was 16 years old. After the arrest, that's when K.N. learned that [Hamre] was in fact 21 years old at the time. This discovery was very upsetting to K.N., was injurious to her mental health . . . and the events actually occurred in Hall County, Nebraska.

Immediately after this factual basis was read into the record, the court specifically asked counsel for Hamre whether she agreed that the factual basis was sufficient to accept Hamre's plea, and counsel responded, "Yes, Your Honor." The court thus accepted Hamre's no contest plea and found him guilty on the sole charge of intentional child abuse. The court ordered a presentence investigation, to include the stipulated sexual offender evaluation, and set the matter for sentencing.

Following a number of continuances, Hamre appeared for sentencing on June 21, 2022. After arguments were made, the court announced Hamre's sentence, noting that it had considered the required factors and the information contained in the presentence investigation report (PSI). The court noted various concerns that were apparent from the PSI, including indications that Hamre failed to appreciate the seriousness of the circumstances and was uncooperative with the probation officer. Nevertheless, the court determined that Hamre was a candidate for probation and sentenced him to 60 months of probation with various conditions, including a 30-day period of confinement in county jail, and ordered that he pay a $2,500 fine. The court found the term of confinement necessary so as to not depreciate the seriousness of the offense and promote disrespect for the law. Upon Hamre's request, the court allowed Hamre 14 days to get his affairs in order and approved work release subject to the rules of the Department of Corrections. Hamre appealed.

ASSIGNMENTS OF ERROR

Hamre assigns that the district court erred in accepting his no contest plea as knowing, intelligent, and voluntary because the factual basis was insufficient. Hamre further raises five claims of ineffective assistance of trial counsel.

## STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id.*

## ANALYSIS

*Factual Basis for No Contest Plea.*

Hamre first assigns that the district court erred in accepting his no contest plea without a sufficient factual basis. A plea of no contest is equivalent to a plea of guilty. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016). To support a plea of guilty or no contest, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged. *Id.* Taking these requirements in reverse order, the record clearly shows that Hamre understood the range of penalties that he faced, and he does not argue otherwise on appeal. Thus, we turn to the factual basis provided by the State.

To ascertain whether the State's factual basis was sufficient, we must identify the elements of the statute under which Hamre was convicted and determine whether the factual basis met those elements. See *id.* Neb. Rev. Stat. § 28-707(1) (Reissue 2016) provides, in pertinent part, that a person commits child abuse if he or she knowingly and intentionally causes or permits a minor child to be placed in a situation that endangers his or her life or physical or mental health. The factual basis in this case established that Hamre deceived a minor child as to his true age and caused or permitted that minor child to perform a sexual act on him. Learning of Hamre's deception and the true nature of the contact was upsetting for the minor child and injurious to her mental health. The factual basis clearly met the elements of the statute under which Hamre was convicted, and Hamre raised no objections to the factual basis before the district court.

On appeal, Hamre now argues the factual basis failed to establish that K.N. was ever put in a situation where her physical or mental health were endangered. Hamre does not dispute that the factual basis as it stands would establish that element. Rather, Hamre now seeks to challenge the accuracy of the factual basis, suggesting that "several different versions of events have been given by K.N. . . . such as how [Hamre] and K.N. met and what actually happened during their meeting." Brief for appellant at 12.

However, prior to accepting his plea, the district court specifically asked if Hamre had any objection to the factual basis, and Hamre's counsel affirmatively assured the court that he did not. Under these circumstances, Hamre has waived his objection to the sufficiency of the State's factual basis. See *State v. Ettleman*, 303 Neb. 581, 930 N.W.2d 538 (2019) (discussing waiver of objection to factual basis where defendant failed to object upon specific inquiry by trial court). Accordingly,

we conclude the district court did not abuse its discretion in accepting Hamre's plea, and we reject Hamre's first assignment of error.

*Ineffective Assistance of Counsel.*

Hamre raises five claims of ineffective assistance of trial counsel on direct appeal. Hamre's first claim asserts that trial counsel was ineffective for failing to object to the factual basis. Hamre's second claim asserts that trial counsel was ineffective for failing "to clearly and timely communicate" with him. Brief for appellant at 5. Hamre's third claim asserts that trial counsel failed to explain the implications of Hamre's conviction on his right to use firearms and hunting bows. Hamre's fourth claim asserts that trial counsel was ineffective for failing to properly advise Hamre on his right to a jury trial. Hamre's fifth claim asserts that trial counsel failed to explain the implications of Hamre's conviction on his ability to live with minor children.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id.*

At the outset, we note that Hamre was originally charged with first degree sexual assault under Neb. Rev. Stat. § 28-319 (Reissue 2016), which is a Class II felony punishable by 1 to 50 years in prison. Pursuant to the plea agreement, Hamre pled no contest to the amended charge of intentional child abuse under § 28-707, which is a Class IIIA felony punishable by 0 to 3 years in prison. On appeal, the State emphasizes that the reduced charge was only offered as part of the negotiated plea agreement, and if Hamre had rejected the agreement, then he would have been tried on the original charge of first degree sexual assault. Moreover, the State argues that it "could have easily proven" the original sexual assault charge through the victim's corroborated account of events. Brief for appellee at 13.

Hamre's first ineffectiveness claim is based on his assertion that the factual basis was insufficient. However, as discussed above, the factual basis provided by the State was sufficient, and therefore, trial counsel was not ineffective for failing to object thereto. See *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018) (counsel cannot be ineffective for failing to raise a meritless argument).

Hamre's second ineffectiveness claim was assigned broadly as the "failure to clearly and timely communicate with [Hamre]." The State argues that Hamre failed to allege this claim with sufficient particularity, and we agree. Alleged errors must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and

an appellate court will not scour the remainder of the brief in search of such specificity. *Id*. Because Hamre failed to specifically assign his second ineffectiveness claim, we decline to address it. *See State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017) (claim that trial counsel "failed to adequately communicate" with defendant not sufficiently specific allegation of deficient performance).

Hamre's third ineffectiveness claim asserts that trial counsel "refused to advise" Hamre on the possible implications of a felony conviction on Hamre's right to "own firearms and hunting bows." Brief for appellant at 5. Hamre argues that counsel's refusal resulted in confusion and disagreement during the presentence investigation, which was ultimately used against him at sentencing. The State argues that Hamre's claim is refuted because the record demonstrates that Hamre was advised of and understood the effect his plea could have on his right to possess weapons.

At the plea hearing, Hamre was specifically advised that a felony conviction could result in the loss of certain civil rights, including "the right to possess a firearm." The probation officer included the following comments on this matter in the PSI:

> The only areas of High risk for him on this assessment were in regard to his use of free time and criminal thinking. . . . [H]e engages in some criminal thinking about this offense specifically and about the consequences of having a felony conviction. Many of his leisure activities are related to hunting and shooting. He struggled throughout this interview to accept that those are no longer possible for him due to his felony conviction and he became argumentative with this officer on several occasions about the weapons restrictions. Finding other recreational activities will be important, but a barrier is with him accepting that there are not loopholes to allow him to continue shooting legally. . . .

> This officer does have some concerns about compliance for Mr. Hamre regarding weapons. Throughout the interview with this officer he was often argumentative on that topic. For example, despite stating an understanding that having a felony conviction means he cannot possess firearms, he asked multiple questions looking for loopholes to continue shooting and expresses a desire to join the military. When this officer informed him that a common request for probation supervision is for the probationer not to have any weapons at all through a term of probation, including archery weapons, due to officer safety concerns, he became upset and said "you can't do that." This officer agreed that a probation officer cannot make that order, but judges often do and this officer did not want him to be taken by surprise when that request was included in his presentence investigation. He then stated the judge can't do that and he wouldn't stand for it.

> As of April 11, 2022 Mr. Hamre still shows as having an active concealed weapon permit. During the interview with this officer he stated he was going to continue to maintain that permit and would continue to carry until sentencing because he hasn't officially been convicted yet.

Thereafter, at the sentencing hearing, Hamre's trial counsel specifically noted on the record that Hamre's felony conviction was "going to change some pretty significant aspects of his life, not least of which being interactions with his family and interactions with his friends and that he's an avid hunter and he knows he's not going to be able to do any of that either."

The record in this case makes clear that Hamre was advised of and understood the possible implications of a felony conviction on his right to possess weapons. During the PSI, Hamre acknowledged an understanding that "having a felony conviction means he cannot possess firearms," and the probation officer explained that probationers are commonly prohibited from possessing any weapons during the term of probation. Nevertheless, Hamre continued to probe for loopholes regarding the use of weapons for hunting. Hamre suggests that if trial counsel had explained the implications of a felony conviction, then he would not have been argumentative during the PSI, and that behavior would not have been used against him at sentencing. However, the record demonstrates that Hamre had difficulty accepting the weapons prohibition even after explicit advisements thereof by the court and the probation officer. To the extent that Hamre's argumentative demeanor during the PSI was used against him at sentencing, such was not the result of deficient performance by trial counsel. Accordingly, Hamre cannot show prejudice, and his third ineffectiveness claim is affirmatively refuted by the record.

Hamre's fourth ineffectiveness claim asserts that trial counsel erroneously advised him that a jury verdict need not be unanimous, and that "if one person thought he was guilty, then he would be found guilty." Brief for appellant at 17. Hamre argues that "if [he] had known that the jury had to be unanimous in their verdict, he may have decided to take his case to trial." *Id.* However, the district court advised Hamre of his right to a jury trial on the record, specifically noting that "in order to find you guilty, the jury has to agree unanimously." Hamre then confirmed on the record that he heard and understood the court's advisement. Under these circumstances, even if trial counsel erroneously advised Hamre as he alleges, Hamre cannot show prejudice, and his fourth ineffectiveness claim is affirmatively refuted by the record.

Hamre's fifth ineffectiveness claim asserts that trial counsel failed to explain the implications of Hamre's conviction on his ability to live with minor children. Hamre asserts that he was living with a girlfriend and her minor child at the time of sentencing and that he was required to make other living arrangements as a result of the probation condition limiting contact with minor children. Hamre argues that trial counsel knew he was living with a minor child at the time of sentencing and yet failed to advise him of the possible implications that his conviction could have on his living arrangements. The State argues that Hamre's claim is refuted by the record.

The probation officer reported discussing with Hamre that "a standard expectation of probation for those who are being supervised for a sexually based offense is not to have contact with minors until therapeutically recommended." Hamre informed the probation officer of certain family members and acquaintances that are minors, but Hamre did not indicate he was living with any minors at the time. Rather, Hamre reported only that "he is single at this time, but recently ended an approximately two year relationship." Hamre further reported that he was purchasing his home and had no concerns regarding his housing situation.

On appeal, Hamre complains that trial counsel's failure to advise him of a possible limitation on contact with minor children left him unprepared to make other living arrangements when the sentence was entered. However, the record demonstrates that Hamre was explicitly advised of such a limitation during the PSI. At that time, Hamre reported that his prior relationship had recently ended, and he did not indicate that he was living with any minor children. Any subsequent living arrangements that included a minor child were made after Hamre was explicitly

advised of a likely limitation on contact with minor children. To the extent that Hamre was unprepared when that limitation materialized, it was not a result of deficient performance by trial counsel. Accordingly, Hamre cannot show prejudice, and his fifth claim is refuted by the record.

## CONCLUSION

For the foregoing reasons, we affirm Hamre's conviction. We further conclude that each of Hamre's ineffective assistance claims are either affirmatively refuted by the record or not pled with sufficient particularity.

AFFIRMED.